RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 09-2460

EDWARD FISHER,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20415-002—Robert H. Cleland, District Judge.

Argued: June 8, 2011

Decided and Filed: July 19, 2011

Before: COLE, CLAY, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Harold Gurewitz, GUREWITZ & RABEN, PLC, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Harold Gurewitz, GUREWITZ & RABEN, PLC, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. Edward Fisher was convicted under 18 U.S.C. § 371 of conspiracy to defraud the United States while serving as in-house general counsel to Simplified Employment Services, Inc. (SES). The conspiracy that led to Fisher's conviction involved SES's filing of false tax returns with the Internal Revenue Service (IRS). Fisher was implicated in the conspiracy based on, among other

1

things, his role as the liaison to SES's outside counsel and his scheme to "back out" SES's tax liability. He was sentenced to 41 months of imprisonment, followed by three years of supervised release, and ordered to pay restitution to the IRS. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The conduct underlying Fisher's conviction occurred between 1998 and 2001, during which time he was employed as general counsel of SES, a professional-employment organization. SES's services included administering its clients' payrolls, issuing employee checks, and remitting employment taxes to the IRS. From 1997 through the first quarter of 2001, SES was the largest privately owned payroll-administration and employee-leasing firm in the United States. SES at one point employed more than 40,000 people in 37 different states.

As part of its federal tax obligations, SES was required to file quarterly payroll tax returns on IRS Form 941. This form required SES to report how much money it and its subsidiaries had withheld from employees' income and how much of that money they had forwarded to the IRS. In 1999, IRS Agent David Hauenstein contacted Dennis Lambka, SES's Chief Executive Officer, because Hauenstein could not find the payroll tax returns for the years 1997, 1998, and 1999. SES had in fact never filed Form 941s for those years.

As a result of the questioning by the IRS agent, Lambka instructed his assistant, Janice Picklo, to prepare and file false Form 941 tax returns. Picklo would figure out how much money SES had actually paid to the IRS in a particular quarter and then file a return for that amount of money, an amount that was far less than what the company actually owed to the federal government. These false returns showed that SES did not have any payroll tax liabilities outstanding. In reality, however, SES's outstanding tax liability was approximately $51,700,000 by the first quarter of 2001.

Lambka testified at Fisher's trial that, in a meeting in the early part of 1999, he informed his highest-ranking executives, including Fisher, of his decision to file false

tax returns because of SES's bleak financial condition.  In May 2000, SES, based on Fisher's recommendation, hired attorney McGee Grigsby of Latham and Watkins to help resolve the company's outstanding tax obligations.  Fisher served as SES's contact person with Grigsby.

At trial, Lambka testified that he and Fisher, among others, agreed that they would not inform Grigsby that SES had filed false tax returns.  They decided instead to blame the systems and software people within SES's accounting department for the tax deficiencies.  Lambka also testified that, based on Fisher's recommendation, SES began to "back out" payroll taxes owed by SES on behalf of clients who were in breach of their respective contracts with SES.  Such clients were referred to as "co-employers," a classification that shifted the tax burden from SES onto the client, who was then responsible for the payment and reporting of all taxes for the affected employees.  This scheme allowed SES to amend its Form 941s to show a reduced tax liability.

Fisher was indicted for conspiracy to defraud the United States and conspiracy to commit bank fraud, both in violation of 18 U.S.C. § 371.  In July 2008, a jury convicted Fisher of conspiring to defraud the United States, but acquitted him of conspiring to commit bank fraud.

Fisher made two objections at trial that are relevant to this appeal.  His first objection relates to a series of notes that Grigsby took contemporaneously with his interactions with various people at SES.  Grigsby was permitted to read most of these notes into evidence under Rule 803(5) of the Federal Rules of Evidence, the hearsay exception for past recollection recorded, because Grigsby could not independently recall his interactions with Fisher or other SES personnel.  Fisher moved to have physical copies of these notes admitted during Grigsby's cross-examination on the theory that they were either not hearsay or were admissible as business records under Rule 803(6) of the Federal Rules of Evidence. Over Fisher's objection, the court concluded that physical copies of the notes were not admissible.

Fisher's other objection concerns the district court's failure to answer two questions that the jury asked during its deliberations at the end of the trial.  The jury

asked:  (1) "Do attorney/client privileges apply to Edward Fisher in relation to his employment at SES?", and (2) "If a legal counsel learns of illegal activities by his employer (if he is employed as their legal counsel) is the legal counsel legally required to report this to the appropriate authorities?"  Fisher argued that the court should have answered "yes" to the first question and "no" to the second question.  The court in fact decided not to specifically answer either of the jury's questions.  Instead, it read to the jury an extensive response, which included these statements:

> My answer to you in brief is that it is not necessary for you to hear the potentially complicated explanation that would be needed to accurately answer these two questions in order to correctly decide the issues that are before you and to render a proper verdict.  The law governing attorney/client privilege is not simple or easy to summarize, but the existence, if any, of an attorney/client privilege in the defendant's precise circumstances and the scope and the duration of such privilege if it existed, need not be sorted out in order for the Government to succeed in proving or for the defendant[] . . .  to raise defenses against, the conspiracy crimes alleged here.

The court also briefly summarized the prosecution's and the defense's theories of the case to explain why it chose not to answer the jury's questions.  Fisher objected to the court's response to the questions submitted by the jury.

After trial, Fisher moved for a judgment of acquittal and for a new trial, again raising both his evidentiary and jury-instruction challenges.  The district court denied both motions.  It then reviewed the Probation Office's Presentence Report, which determined that Fisher's total offense level was 25 and his criminal history category was I.  This yielded a Guidelines range of 57 to 71 months of imprisonment.  Under 18 U.S.C. § 371, however, the maximum term of imprisonment for Fisher's offense is set at five years.  Fisher's final Guidelines range was therefore 57 to 60 months of imprisonment.  The district court ultimately sentenced Fisher to a below-Guidelines sentence of 41 months of imprisonment, three years of supervised release, and ordered him to pay restitution in the amount of $10,000,000 to the IRS.

Fisher now appeals his conviction.  He raises the following three issues on appeal:  (1) whether the district court erred when it refused to answer the questions that

the jury asked during its deliberations with regard to the attorney-client privilege and in-house counsel's duties to report wrongdoing, (2) whether the court erred in not admitting Grigsby's notes and emails into evidence, and (3) whether the court erred by denying Fisher's motion for acquittal.

## II.  ANALYSIS

### A.  Jury questions

A district court's response to questions from the jury is reviewed under the abuse-of-discretion standard. *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992). This court "must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision." *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993).  "There is a high standard for reversal of a conviction on the grounds of improper instructions.  Under this standard, an appellate court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading, and prejudicial." *United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009) (citation and internal quotation marks omitted).

Where there is evidence that the jury is confused over an important legal issue that was not covered by the original jury instructions, a district court abuses its discretion by not clarifying the issue. *United States v. Nunez*, 889 F.2d 1564, 1567–69 (6th Cir. 1989) (holding that the district court was required to deliver a supplemental jury instruction where the original jury instructions did not address whether there could be a conspiracy comprised of a single defendant and an undercover officer, a legal issue that was key to the jury's deliberations).  A district court, however, should refrain from straying beyond the purpose of jury instructions by answering jury questions that seek collateral or inappropriate advice. *United States v. Combs*, 33 F.3d 667, 670 (6th Cir. 1994) (discussing generally a district court's duties with regard to supplemental jury instructions).

In this case, Fisher was convicted of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. To convict Fisher on this count, the government was required to prove beyond a reasonable doubt (1) that two or more persons conspired to interfere with the lawful function of the IRS in collecting taxes at or about the time alleged, (2) that the defendant willfully joined the conspiracy, (3) that one or more coconspirators did at least one of the overt acts described in the indictment, and (4) that the overt act was done in furtherance of the conspiracy. *See United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991) (setting forth the elements that the government must prove to obtain a conviction under 18 U.S.C. § 371). The jury instructions that the district court delivered adequately addressed each of these elements. There was no mention of the attorney-client privilege or of an attorney's potential obligation to report illegal activity in the original jury instructions, and Fisher does not challenge the validity of those instructions here.

Instead, Fisher argues that the jury's questions regarding the attorney-client privilege and an attorney's duty of disclosure raised important legal issues not covered by the original instructions. He asserts that these legal issues are relevant because "[t]he Government's main premise for [his] criminal liability for the conspiracy was that he failed to inform Latham and Watkins attorney Grigsby that SES had intentionally falsified the IRS Form 941 beginning in late 1999." Fisher argues that the court was therefore required to answer the jury's questions.

The district court disagreed. It acknowledged that there was testimony touching on the concept of the attorney-client privilege. But it concluded that neither the attorney-client privilege nor the potential duty to disclose was relevant to either count, and that neither party specifically raised these legal principles at trial. In addition, the court stated that an explanation would be "potentially complicated," and that "the existence, if any, of an attorney/client privilege in the defendant's precise circumstances . . . need not be sorted out in order for the Government to succeed in proving or for the defendant[] . . . to raise defenses against the crimes alleged here."

We agree with the district court's conclusion that the questions posed by the jury were not relevant to the crimes charged and therefore did not require answers. Neither question is pertinent to the count of conspiracy to defraud the United States, the only count on which Fisher was convicted and therefore the only count relevant on appeal. The evidence presented to the jury through Lambka's testimony established that Fisher knew that SES was filing false tax returns with the IRS. Lambka also testified that he and Fisher agreed that they would not so inform Grigsby. Finally, Lambka said that SES began to "back out" payroll taxes that it owed based on Fisher's recommendation. This caused SES to improperly reduce its tax liability. Assuming that the jury credited Lambka's and others' testimony, there was evidence showing that (1) two or more persons conspired to interfere with the lawful functioning of the IRS, (2) Fisher knew of the conspiracy and voluntarily chose to join the same, (3) at least one conspirator did an overt act described in the indictment, and (4) the overt act was in furtherance of the conspiracy.

Contrary to what Fisher argues, the government's theory of liability was not dependent on whether Fisher had an affirmative duty to inform Grigsby and/or the IRS that SES had intentionally filed false tax returns, yet failed to do so. Nor did the government's theory turn on whether Fisher's actions were governed by the attorney-client privilege. Rather, the government sought to prove, and the jury was permitted to find, that Fisher was an active participant in the conspiracy. Abundant evidence was presented at trial, such as Fisher's recommendation that SES improperly "back out" its payroll taxes, to show that Fisher actively participated in the conspiracy. In other words, the evidence of wrongdoing that was presented would support a guilty verdict regardless of whether Fisher did or did not have a duty to inform Grigsby and/or the IRS of SES's illegal activity.

This case is distinguishable from a situation in which the jury's questions raise an important legal issue central to the case that was not addressed by the original jury instructions. *See, e.g.*, *United States v. Nunez*, 889 F.2d 1564, 1568–69 (6th Cir. 1989) (holding that the jury's question raised an important legal issue that the district court was

required to address because, without a supplemental instruction, the jury might have incorrectly thought that it could convict the defendant on the conspiracy charge based on an agreement between the defendant and a government agent).  The present situation is closer to a case in which the district court's original instructions "provided a comprehensive and accurate definition" of the charges and "focused the jury on the elements of conspiracy."  *See United States v. Berry*, 290 F. App'x 784, 791 (6th Cir. 2008) (holding that the district court did not commit plain error by failing to deliver a "buyer-seller" supplemental jury instruction in response to the jury's question of whether the act of selling drugs is equal to a conspiracy where the original jury instructions were adequate and complete).

Fisher also challenges the district court's summary examples of the theories presented by each side during trial.  He asserts that this portion of the supplemental jury instruction was incomplete and prejudicial.  The district court, however, specifically stated that

> when I say that the Government has claimed this . . . and the defense has claimed something else, I don't mean to limit or to focus particularly on anything that the Government has claimed or the defense has claimed. You should take into account everything that the Government has argued, everything that the defense has argued when you're assessing the evidence, of course.

Viewed as a whole, the district court's original jury instructions and its supplemental instructions were not confusing, misleading, or prejudicial.  *See United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009).  We therefore hold that the district court did not abuse its discretion in declining to answer the two questions submitted by the jury during its deliberations.

## B.  Grigsby's notes

The second issue on appeal concerns the district court's decision to exclude the physical admission of Grigsby's notes. We review a challenge to a district court's evidentiary rulings under the abuse-of-discretion standard.  *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).  And we will reverse a district court's evidentiary

decisions only where the "abuse of discretion has caused more than harmless error." *United States v. Johnson*, 440 F.3d 832, 847 (6th Cir. 2006) (internal quotation marks omitted).

Fisher argues that the physical copies of Grigsby's notes should have been admitted at trial either because they are not hearsay or because they were admissible under Rule 803(6) of the Federal Rules of Evidence, the business-records exception to the general bar on hearsay evidence. He asserts that without the physical copies of Grigsby's notes, "[i]t was literally impossible for Fisher to prove to the jury what Grigsby knew about facts directly related to Fisher's alleged role in the conspiracy."

The district court excluded the physical copies of Grigsby's notes for two reasons: (1) the notes included several layers of hearsay, at least some of which would not have qualified under the hearsay exception found in Rule 803(6) for business records, and (2) even if the notes were admissible under 803(6), they would still be excludable under Rule 403 of the Federal Rules of Evidence because they are "voluminous, cryptic, and idiosyncratic," and "admitting them all with or without attempts at limiting instructions would have a high likelihood of misleading and confusing the jury." In its post-judgment opinion, the district court concluded that Grigsby's notes were not the type of business records contemplated by Rule 803(6) because they were prepared in anticipation of litigation, and their admission would lead to a "perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy." *See Palmer v. Hoffman*, 318 U.S. 109, 113 (1943).

We need not determine whether Grigsby's notes should have been admitted as nonhearsay or under Rule 803(6) because the district court did not abuse its discretion in concluding that the physical copies of the notes would have in any event been inadmissible under Rule 403 of the Federal Rules of Evidence. Under Rule 403, a district court is granted "very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989) (internal quotation marks omitted). Rule 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, the district court determined that there was no

suitable way of cautioning the jury or limiting the impact of such voluminous[,] handwritten[,] cryptic and idiosyncratic recordings such as [Grigsby's notes]. Even if they qualify as business records, they are . . . too likely to inject confusion and too voluminous and potentially misleading to be reasonably subject to a limiting instruction.

It therefore permitted Grigsby to read most of his notes into evidence under Rule 803(5) of the Federal Rules of Evidence, the exception to the hearsay rule for past recollection recorded.

Thus, contrary to Fisher's argument that he was unable to use Grigsby's notes to prove his case, much of the contents of Grigsby's notes were admitted into evidence, albeit in testimonial rather than written form. Because the vast majority of Grigsby's notes were in fact admitted as his past recollection recorded, Fisher has failed to show that the district court's exclusion of the written copies of the same notes was prejudicial. *See United States v. Reed*, 821 F.2d 322, 326 (6th Cir. 1987) (holding that the district court did not abuse its discretion in excluding certain IRS Form W-2s and payroll records under Rule 403 where the physical records were potentially misleading and presented no evidence not already admitted through testimony). We therefore conclude that the district court did not abuse its discretion in excluding the physical copies of Grigsby's notes.

## C.  Motion for acquittal

Fisher's final issue on appeal focuses on the district court's denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. "We review de novo a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010) (internal quotation marks omitted). The relevant inquiry is whether, "viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under the *Jackson v. Virginia* standard, a reviewing court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  "Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt." *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (internal quotation marks omitted). "The general hesitancy to disturb a jury verdict applies with even greater force when a motion of acquittal has been thoroughly considered and subsequently denied by the trial judge." *Id.* at 418–19.

To prove that a conspiracy existed, the government need not show a formal written agreement.  *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000).  A showing of "tacit or mutual understanding among the parties" is sufficient. *Id.* (internal quotation marks omitted).  "Likewise, direct evidence of the conspiracy is not necessary. It is enough to present circumstantial evidence which a reasonable person could interpret as showing participation in a common plan." *United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008) (alterations and internal quotation marks omitted).  "Once a conspiracy has been established, the prosecution need only produce slight evidence to implicate the defendant." *United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991).

Fisher's main challenge to the sufficiency of the evidence focuses on whether he willfully joined the conspiracy to defraud the United States of tax revenue.  He raised substantially the same argument before the district court in his motion for acquittal.  The court denied Fisher's motion, concluding that

> the trial testimony and the documents and notes produced by [Fisher] could lead a rational jury to conclude that [Fisher] joined the conspiracy to defraud the IRS. . . . Furthermore, [Fisher] offers no substantial argument regarding insufficiency of the evidence; rather he reargues the evidence and testimony presented at trial and second-guesses the jury's determination regarding the same.

In support of his argument, Fisher again asserts that there was no evidence that he had any contact with the IRS or that he possessed more than mere knowledge of the conspiracy. He also argues that he was not obligated to make any disclosures to Grigsby, and that failing to disclose certain information to Grigsby cannot support his conviction.

Contrary to Fisher's argument, sufficient evidence was presented at trial to sustain the jury's verdict. Lambka testified that he informed Fisher, among others, of his decision to have SES file false tax returns. He also said that Fisher agreed not to inform Grigsby that SES had filed such false returns, and that they would instead tell Grigsby that accounting errors were caused by software and systems personnel within SES's accounting department. Lambka further testified that Fisher created a scheme whereby SES improperly "backed out" payroll taxes owed by SES on behalf of clients who were in breach of their contracts with SES. Based on this evidence, a reasonable jury could conclude that Fisher voluntarily joined and contributed to the conspiracy. *See, e.g.*, *Sturman*, 951 F.2d at 1474 (upholding a conspiracy conviction where the jury could reasonably infer that the defendant participated in the conspiracy by opening foreign bank accounts under assumed names while serving as a director of a corporation that channeled money to other businesses); *Hunt*, 521 F.3d at 647 (upholding a conspiracy conviction where a "chain of reasonable inferences leads to the rational conclusion that Hunt tacitly agreed to sign orders for patients he had never examined so that he and Noble could submit bills for their services to Medicare and private insurance").

As the district court concluded in its order denying Fisher's motion for acquittal, he is essentially "rearguing the impact or force of trial testimony, attempting, essentially, to discredit the Government's theory regarding the conspiracy." But we must view all of the evidence in the light most favorable to the government to preserve the "factfinder's role as weigher of the evidence." *Jackson v. Virginia*, 443 U.S. at 319. Under this standard, a rational juror could have found, beyond a reasonable doubt, that

Fisher willfully joined and assisted the conspiracy.  We therefore find no error in the district court's denial of Fisher's motion for acquittal.

### III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.