**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0875n.06

**No. 10-5902**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | **Dec 21, 2011** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RICHARD EUGENE DAVIDSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

**SILER**, Circuit Judge. Defendant Richard Davidson appeals his convictions of various drug and firearm offenses under 21 U.S.C. § 841 and 18 U.S.C. § 924(c)(1). Davidson raises a number of issues on appeal, including no jurisdiction, an illegal search, insufficient evidence, a faulty indictment, prosecutorial misconduct, and a supplemental jury instruction. For the reasons stated below, we **AFFIRM** the judgment of conviction.

**I.**

In 2009, Davidson was convicted at trial of three counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); three counts of distributing at least five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); one count of possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and two counts of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Davidson was sentenced to concurrent terms of 78 months for the drug offenses, plus a consecutive term of 300 months for the firearm convictions, for a total of 378 months.

In 2008, officers executed a search warrant at Davidson's residence. There they found several loaded firearms, digital scales, ammunition, and some cocaine hydrochloride.

At trial, Davidson was allowed to proceed *pro se* and was assisted by standby counsel. During his closing argument, Davidson claimed that the government wanted the jury to "send [him] to prison for 60 to life." The prosecutor objected, and the court explained that the sentence is determined by the court. Later in his closing, Davidson again implied that he was facing life imprisonment, stating, "Would it be fair to send someone to prison for life, and there's no evidence to prove beyond a reasonable doubt that that person committed a crime?"

After the court gave its instructions and the jury retired to deliberate, the prosecutor expressed her concern about Davidson's statements regarding sentencing in his closing. Ten minutes after the jury initially retired, the court gave them a further instruction that stated in part:

> During the course of the Defendant's final argument he mentioned on a couple of occasions that he was facing a sentence of 60 years to life. That is an incorrect statement of the law, it's an incorrect statement of the punishment that he is facing.
>
> As I indicated to you earlier, it is my job to decide what the appropriate punishment will be in this case, it is not your job. As a matter of fact, you should not even consider the possible punishment in deciding upon your verdict. Your job is to look at the evidence and decide if the government has proved the defendant guilty beyond a reasonable doubt.

**II.**

Davidson argues that the district court lacked jurisdiction because state and local agents, rather than federal agents, conducted the majority of the investigation, the alleged offenses did not take place within a "federal zone," and there is no injury to the United States.

Pursuant to 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Because Davidson was charged with violating federal law, specifically 21 U.S.C. § 841 and 18 U.S.C. § 924(c), the district court had jurisdiction in this case.

### III.

Davidson argues that Agent Herndon's affidavit, which was used to obtain a search warrant of Davidson's residence, contained intentionally false statements and material omissions in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). A defendant is entitled to a *Franks* evidentiary hearing to further an argument along these lines if he "makes a substantial preliminary showing" that the affidavit contained false statements made knowingly and intentionally or with reckless disregard for the truth, or that the affiant engaged in deliberate falsehood or disregard for the truth in omitting information, and the finding of probable cause was ultimately dependent on either the false statement or the material omission. *Id.* at 155-56.

The district court denied Davidson's repeated motions requesting a *Franks* hearing in this case, and the standard of review with respect to this denial is unsettled. *See United States v. Fowler*, 535 F.3d 408, 415 n.2 (6th Cir. 2008) (explaining that some circuits employ a clear error standard while others review de novo). It is unnecessary to decide the standard of review in this case, however, because Davidson's argument fails even under de novo review.

Davidson first claims that the numerous controlled drug purchases were not recorded, as alleged in the Herndon affidavit. The record indicates, however, that recordings of the controlled buys did in fact exist and were disclosed to Davidson. The statement that the controlled buys were recorded is therefore not false.

Davidson next claims that the affidavit contained a material omission in that it did not explain that some of the controlled buys were conducted through Josh Taylor and Kimberly Goins, rather than with Davidson directly. Davidson's claim does not satisfy the "high[] bar for obtaining a *Franks* hearing on the basis of an allegedly material omission." *Fowler*, 535 F.3d at 415. There is no indication that the omission in this case was made intentionally or with reckless disregard, or that the probable cause finding would have been different had this information been included. To the contrary, the affidavit contained sufficient information regarding the controlled buys and the cooperating informant's statements to demonstrate probable cause, regardless of the alleged omission. Davidson has thus failed to make a showing that he was entitled to a *Franks* hearing, and the district court properly denied his motion to suppress.

## IV.

Davidson argues that the indictment is defective because it is "multiplicitous" in that it charges separate counts for the same underlying drug offense. He also argues that it was constructively amended at trial. These arguments are without merit.

"Multiplicity is charging a single offense in more than one count in an indictment." *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) (internal quotation marks omitted). In this

case, the record refutes Davidson's claim that the indictment charges separate counts for a single offense.

Davidson further claims that the indictment was constructively amended at Count Eight from a charge of "distribution" to "possession with intent to distribute." However, the superseding indictment lists the offense as "possession with intent to distribute" cocaine hydrochloride. Therefore, Davidson has failed to point to any deficiency in the indictment.

## V.

Davidson next challenges the sufficiency of the evidence supporting his conviction. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### A. Drug Offenses

Davidson argues that there was insufficient evidence to convict him because the prosecution failed to present "recordings, photos, phone records, video, nor any of the like," which, "if it existed, may have supported the government in proving the elements [of the crime]." The relevant inquiry, however, is whether the evidence presented at trial was sufficient.

In this case, the evidence is overwhelming and plainly sufficient to support a conviction. For each separate drug offense, the government presented the testimony of the cooperating informants, any relevant intermediaries, law enforcement officers who monitored the transactions, and the scientist who tested the drugs. There was also expert testimony from DEA Agent Lewis, who testified that Davidson was manufacturing crack cocaine for distribution. Based on this evidence,

a "rational trier of fact could have found . . . beyond a reasonable doubt" that Davidson was distributing drugs in violation of 21 U.S.C. § 841. *Jackson*, 443 U.S. at 319.

### B. Firearm Offenses

Davidson's argument regarding his convictions under 18 U.S.C. § 924(c)(1) likewise fails. Section 924(c)(1) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . , *uses or carries* a firearm, or who, in furtherance of any such crime, *possesses* a firearm," shall be sentenced to prison for at least five years. 18 U.S.C. § 924(c)(1) (emphasis added). The district court declined Davidson's request that the court give a jury instruction defining the "use" prong, and Davidson claims on appeal that there was insufficient evidence to prove that he "used" a firearm during and in relation to a drug trafficking crime. Regardless of whether this assertion is true, Davidson was charged with only "possess[ing] firearms in furtherance of a drug trafficking crime."

Davidson was charged under the "possessing" prong in relation to two separate drug offenses: (1) distributing crack cocaine in one of the controlled transactions on November 3, 2008, and (2) possessing crack cocaine with intent to distribute on November 12, 2008, when the search warrant was executed. With regard to the November 3, 2008, offense, Matthew Haga, a cooperating informant, testified that Davidson had a pistol tucked into his waistband during the transaction and that other firearms were nearby in the room where the transaction occurred. Thus, Haga's testimony establishes that Davidson was in possession of firearms during a drug trafficking crime.

In the search of Davidson's residence in 2008, officers found loaded firearms, digital scales, ammunition, some cocaine hydrochloride, and various measuring cups containing cocaine residue.

They also found mail addressed to Davidson at that location. "Proof that [a] person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (internal quotation marks omitted). The loaded firearms discovered at Davidson's residence at least establish constructive possession.

With regard to the "in furtherance" element, there must be a "specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Agent Lewis testified that drug dealers often possess firearms to protect themselves and their businesses. It is also the case that many of the firearms in Davidson's residence were loaded, easily accessible, and in strategic locations. *See id.* There is thus ample evidence for a rational trier of fact to find beyond a reasonable doubt that Davidson possessed firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1).

## VI.

Davidson points to many alleged instances of prosecutorial misconduct that he argues warrant a new trial. Nearly all of the allegedly improper statements come from the prosecutor's closing argument, and "[w]hether the government's closing argument constitutes prosecutorial misconduct presents a mixed question of law and fact that we review de novo." *United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir. 2002).

Evaluating a "claim of prosecutorial misconduct involves a two-step inquiry." *United States v. Abboud*, 438 F.3d 554, 584 (6th Cir. 2006). "First, the Court must determine if the government's statements were improper." *Id.* "If they appear improper, we then look to see if they were flagrant

and warrant reversal." *Tarwater*, 308 F.3d at 511. Whether improper government statements were flagrant depends on four factors:

(1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury];

(2) whether they were isolated or extensive;

(3) whether they were deliberately or accidentally placed before the jury; and

(4) the strength of the evidence against the accused.

*United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996) (alterations in original) (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)).

### A. Personal Opinion about Guilt

Davidson points to twenty-five statements by the government that he claims improperly express the prosecutor's personal opinions regarding his guilt. "[A] prosecutor may not express a personal opinion concerning the guilt of the defendant . . . because such personal assurances of guilt . . . exceed[] the legitimate advocate's role by improperly inviting jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000). However, a prosecutor is "free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt." *Id.*

The majority of the statements cited by Davidson fall in the latter category and were not improper. In context, these statements are merely summaries of the evidence against the defendant

or suggestions that the evidence shows that Davidson was a drug dealer. *See Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008) ("Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."). Two statements made by the prosecutor, however, are arguably improper in that they may be understood as personal intimations about Davidson's guilt. At the beginning of her final rebuttal argument, the prosecutor criticized Davidson's characterization of the case before stating, "Is he innocent? No." Near the end, the prosecutor again claimed that "the Defendant is guilty." These statements can be less easily understood as a summary of the evidence presented in the case, and it is possible that a jury could perceive them as the prosecutor's personal opinion.

However, even though these two statements are arguably improper, Davidson's claim fails because they do not rise to the level of flagrancy. The district court gave repeated, though general, instructions that the jury should disregard the lawyers' statements and arguments if they conflicted with the evidence or the court's instructions about the law. Furthermore, the overwhelming strength of the evidence against Davidson weighs against a finding of flagrancy.

Because the statements were not flagrant, we only reverse if "'(1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction.'" *Cobleigh*, 75 F.3d at 247 (quoting *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995)). Davidson cannot meet this test. He did not object to the prosecutor's statements, the court gave general instructions regarding the attorneys' statements during the proceeding, and, as explained above, the proof against Davidson was overwhelming.

### B. Vouching for the Credibility of Government Witnesses

As with statements about the defendant's guilt, "[a] prosecutor should not give his own opinion as to the credibility of [a] witness." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). Davidson points out several improper statements in which the prosecutor vouches for the credibility of government witnesses. Near the beginning of her rebuttal, the prosecutor stated, "I'd submit to you, the testimony of Kim Goins is incredibly credible." Referring to Goins and Josh Taylor, the prosecutor said, "They're telling the truth here today, I'd submit to you, because they got the drugs from Richard Davidson." Later, the prosecutor again referred to Goins as "credible" and the rest of the witnesses as "telling the truth, especially Kim Goins."

Although ultimately concluding that a new trial was not necessary, in *United States v. Krebs*, 788 F.2d 1166, 1176-77 (6th Cir. 1986), we found prosecutorial misconduct where the prosecutor stated: "I want to suggest to you that [the government witness] was telling the truth. . . . Basically she had no reason to lie," and "she is basically telling the truth in this case because she had no reason to lie." *Krebs*, 788 F.2d at 1176. The prosecutor's comments in this case are similar.

Because these statements may have been improper, the second inquiry is to determine whether the comments were flagrant. The court gave potentially curative instructions explaining that the prosecutor's statements were not evidence, as discussed above. Also weighing against Davidson is the fourth flagrancy factor, "the strength of the evidence against the accused." *See Cobleigh*, 75 F.3d at 247. Ultimately, the prosecutor's statements do not meet the test for flagrancy simply because of the overwhelming strength of the evidence against Davidson.

### C. Inflammatory Comments

Davidson next argues that the prosecutor made a number of inflammatory statements. The only statement meriting discussion is the prosecutor's comment that "[t]his is a cancer to our society, shooting guns around kids and slinging dope, taking advantage of weak people." The prosecutor, albeit sensationally, was referring in part to Officer Hritz's testimony that Davidson had fired a shotgun near an area where children were playing.

In *United States v. Morrow*, the prosecutor stated during his closing that carrying a weapon during a drug offense (as the defendant had allegedly done) "exposes the lives of agents and other people, this is national forest land, you and I, our children have rights to walk on forest land, and that's reason [sic] we have laws we do, to protect citizens, individuals." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). We held that "the prosecutor's ill-chosen words did not violate Morrow's right to a fair trial." *Id.* As in *Morrow*, the statement in this case was isolated, and the evidence was more than sufficient for a conviction. Even if the comment was inflammatory and improper, it was not flagrant and does not warrant a new trial.

### D. Comments Regarding Davidson's Failure to Testify

Davidson claims that the prosecutor impermissibly commented on his failure to testify at trial during her closing argument. The prosecution stated: "Can he rebut any of the proof in this case by the witnesses that you all heard from his friends? Can he rebut that? No he can't." These comments, while inartfully expressed, were not improper when understood in context. The prosecutor is directly responding to Davidson's closing statements, suggesting that he has refused to address or engage with the evidence against him, and instead simply argued that the investigation

was racially motivated. In any event, it was not flagrant in that it was isolated, it would not tend to mislead the jury, and the strength of the evidence was overwhelming.

### E. Other Allegations of Misconduct

Davidson's other arguments concerning prosecutorial misconduct are without merit. He argues that the prosecution misquoted Tera Love's testimony, falsely suggested that he had called witnesses, improperly referred to him as a self-described rapper, improperly referred to other bad acts, testified during opening and closing arguments, and knowingly presented false testimony.

The prosecution's paraphrasing of Love's testimony was accurate, as were the prosecutor's comments that Davidson "had enablers taking the stand on his behalf." The prosecutor was not implying that Davidson called any witnesses, but was instead pointing out that the government's witnesses were still reluctant to testify against him. It was also not improper for the prosecution to portray Davidson as a self-described rapper; witnesses discussed his music career, and Davidson himself elicited testimony about his music on cross-examination.

The prosecutor's reference to Davidson's "other bad acts," such as Officer Hritz's testimony regarding the shooting in Rockwood, was not improper in that the prosecutor was simply referring to evidence that was properly admitted during trial. Davidson's conclusory claim that the prosecutor "testified" on a number of occasions is also without merit. Finally, Davidson argues that the government knowingly presented false testimony when it allowed Haga to testify that he observed a pistol tucked into the waistband of Davidson's pants. Davidson's argument that this testimony was false seems to be based on the fact that the pistol was not mentioned in Agent Herndon's warrant affidavit (the affidavit only mentioned that Haga had seen an assault-type rifle on a coffee table).

Simply because the warrant affidavit does not include every detail, however, does not mean that Haga's testimony is false, or especially that the government knew the testimony to be false.

**VII.**

Davidson's final contention is that the district court erred in recalling the jury to provide supplemental instructions ten minutes after they first retired. As an initial matter, recalling the jury in this manner does not, as Davidson argues, run afoul of Federal Rule of Criminal Procedure 30(d). Rule 30(d) provides that a party objecting to jury instructions "must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Because the government convinced the court to recharge the jury *after* it had retired to deliberate, Davidson argues that the court could not have given the supplemental instructions. However, Rule 30 "'simply does not prescribe the procedure for supplemental instructions after the jury has retired.'" *United States v. Graham*, 484 F.3d 413, 420 (6th Cir. 2007) (quoting *United States v. Andrade*, 135 F.3d 104, 110 (1st Cir. 1998)). The district court therefore did not lack authority to give the supplemental instruction under Rule 30.

Here, the district court concluded that there was possible confusion regarding Davidson's erroneous statement about his likely sentence and the role of the jury, and it decided to give a supplemental instruction to correct the possible misunderstanding. Davidson has not shown that these clarifying instructions were unfair or prejudiced him in any way, and the district court did not abuse its discretion in recalling the jury to give these supplemental instructions.

**AFFIRMED.**