RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0419p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee*,

     *v.*

MARIO WASHINGTON (11-6009) and JEROME JONES (11-6152),

                    *Defendants-Appellants.*

Nos. 11-6009/6152

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cr-20240—Jon Phipps McCalla, Chief District Judge.

Decided and Filed: December 26, 2012

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Kemper B. Durand, THOMASON, HENDRIX, HARVEY, JOHNSON AND MITCHELL, PLLC, Memphis, Tennessee, for Appellant in 11-6009. Doris Randle-Holt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant in 11-6152. Tony R. Arvin, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

    ROGERS, Circuit Judge. Criminal defendants Mario Washington and Jerome Jones appeal their convictions and sentences of 180 months and 330 months, respectively, for carjacking and, in Jones's case, for the use and carrying of a firearm during a crime of violence. There was sufficient evidence to convict the defendants of these crimes, and none of their arguments on appeal warrants reversal. In particular, the district court could properly decline to allow impeachment questioning on the basis of

1

the victim-witness's prior conviction for theft of services, because that crime did not involve a dishonest act for purposes of Federal Rule of Evidence 609(a)(2). The district court also did not abuse its discretion by responding to jury questions in the way that it did, or in its sentencing determinations.

I.

On May 31, 2009, Jerome Jones shot Jeramie Lipford four times in the parking lot of a Memphis convenience store, and Lipford's car was taken from the scene. Lipford sustained two gunshot wounds to the legs, one to the torso, and one to his hand. Beyond these agreed facts, the defendants and the Government differ significantly in their versions of the events surrounding the shooting. While there is no dispute that Jones shot Lipford, the Government maintains that the shooting occurred during the course of a robbery and carjacking, while Jones and Washington describe the incident as a drug deal gone bad. Contrary to the Government's assertions, the defendants deny having taken the vehicle and claim to have fled on foot.

Jones and Washington maintain that they went to a Citgo convenience store in the Frayser area of Memphis with two female friends, Trenika Lambert and Mia Williams, after Williams arranged a drug transaction with Lipford. They claim they arrived shortly before Lipford pulled into the parking lot. In the defendants' version of events, Jones then entered the car, gave Lipford money for marijuana and ecstasy, and discovered that the "ecstasy" was fake. Jones then tried, first verbally, and then physically, to retake his money. Jones maintains that he drew his gun only when Lipford began to exit the car and appeared to be reaching for his own weapon. According to Jones, he shot Lipford once in the hand during the ensuing struggle over Jones's gun, and he shot Lipford three additional times as Lipford tried to run away from the car. Eventually, says Jones, a wounded Lipford tossed him the money, and Jones and Washington fled on foot.

The Government contends that the parties did not have an arranged meeting at the store. In the Government's version of events, Lipford asked Williams to buy cigars for him, and while she was inside the store, Jones entered Lipford's vehicle and

immediately drew his gun in an attempt to rob him. Lipford was able to knock the pistol out of Jones's hand, but when Lipford left the car to dive for the gun, Washington hit Lipford in the back of the head. When Lipford was able to run, Jones recovered his weapon and started shooting at him. It was Lipford's testimony that Jones shot him once "in the butt," causing him to fall to the ground, and twice more (in the legs) as he stood over him. Jones then took money from Lipford's pockets and climbed into Lipford's car, which Washington had taken during the shooting. According to the Government, Jones fired the final shot, hitting Lipford in the hand, as the defendants fled the scene in the stolen vehicle.

After the incident, Lipford was hospitalized for one week and was bedridden for five to six months. Over the course of his recovery, he underwent multiple surgeries. The shot to his torso caused intestinal damage, and he wore a colostomy bag for a year. He now has a steel rod in one of his legs due to damage from the gunshots. He is unable to move the finger that was injured in the shooting, and as a result, he has limited use of his hand.

Based on interviews with Lipford and Williams, and on a photographic lineup in which Lipford identified Jones and Washington, Memphis police arrested the defendants. The case proceeded to trial in the United States District Court for the Western District of Tennessee.

In support of its case, the Government offered testimony from Lipford, Lambert, several first responders, and federal and state investigators. Lipford testified to the Government's version of events and described his injuries. An EMT testified that Lipford was "hysterical" when she arrived on the scene. She also related her observations about Lipford's injuries, noting extensive bleeding in his shirt and bullet holes in his upper thigh and buttock area. She testified that, based on her observations, she had been concerned about internal injuries. A forensic investigator testified about the location of the bullet casings he found on the scene, recalling that casings were recovered in the area where Lipford was originally parked, beside where he fell, and a

further distance away, consistent with the path the defendants allegedly took in Lipford's car.

The jury found Washington guilty of carjacking without serious bodily injury, and the court sentenced him to 180 months in prison. The jury returned guilty verdicts against Jones for carjacking resulting in serious bodily injury and for using and carrying a firearm during and in relation to a carjacking. The court sentenced him to 210 months in prison for the first count and 120 months for the second count. He was given sentencing enhancements for obstruction of justice (perjury) and for the infliction of a permanent or life-threatening injury. Both defendants' sentences are within the guidelines.

II.

The Government provided evidence sufficient to allow a rational trier of fact to conclude that Jones took Lipford's car, and that Jones intended to cause serious harm to Lipford. The jury also heard sufficient evidence to satisfy the intent requirement of the federal carjacking statute.

This court reviews challenges to the sufficiency of the evidence supporting a criminal conviction in the light most favorable to the Government, and we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). Circumstantial evidence alone can meet this burden. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). All reasonable inferences and resolutions of credibility are made in the jury's favor. *Avery*, 128 F.3d at 971.

The federal carjacking statute, 18 U.S.C. § 2119, provides as follows:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years,

or both,

> (2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119.

The Government clearly produced evidence sufficient to establish that Jones intended to cause serious bodily harm to Lipford. Although Jones testified that, had he intended to kill or seriously harm Lipford, he would have aimed higher on Lipford's body as he ran, or fired at Lipford's chest as he lay wounded, the Government presented uncontested evidence that Jones indeed shot him four times. The jury's choice to disregard Jones's braggadocio regarding his marksmanship was supported by the evidence.

There was also sufficient evidence at trial to support the jury's determination that the defendants took Lipford's vehicle. Under the Government's theory, the entire criminal episode constituted a robbery that turned violent when Lipford either resisted or refused to give the defendants his property. The Government produced testimony from Lipford that Jones threatened him with a weapon, shot him multiple times as he tried to flee, took money from his pockets, and, with the aid of Washington, left the scene in Lipford's car, firing one additional shot as the two sped away from the scene. Although the testimony of a single witness is sufficient to support a conviction, *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), the Government put on additional evidence sufficient to aid a reasonable jury in finding that the defendants left the scene in the victim's vehicle. Lambert testified that Jones's first action upon arriving at the gas station was to enter Lipford's vehicle; the crime scene investigator found a bullet casing at a location consistent with the alleged flight in Lipford's car; and first responders

testified that when they arrived at the convenience store mere minutes after the shooting, Lipford's car was gone.

The Government offered evidence connecting the shooting to the auto theft in a manner sufficient to satisfy § 2119. The *mens rea* element of the carjacking statute is satisfied by an unconditional intent to do harm, and the Supreme Court has clarified that § 2119 also allows for a showing of "conditional intent," that is, that the defendant was willing to inflict death or serious bodily injury had it become necessary in order to take the vehicle. *Holloway v. United States*, 526 U.S. 1, 7–8 (1999).

Under either theory of intent, Jones argues that the Government failed to introduce evidence connecting the violence to the taking of the car. Jones relies on *United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999) and *United States v. Harris*, 420 F.3d 467 (5th Cir. 2005), for his argument that the Government must show that there was a nexus between the intent—conditional or otherwise—to do harm and the objective of stealing the car. These cases hold that, in order to satisfy the intent requirements of the statute, the defendant must intend harm *in order to* complete the theft of the car, distinguishing cases where the vehicle may have been stolen as an afterthought to a separate violent crime. *See Applewhaite*, 195 F.3d at 684–85; *Harris*, 420 F.3d at 471–72. However, even if this standard were controlling in this circuit, the Government provided sufficient evidence at trial to persuade a rational trier of fact that Jones possessed the requisite intent. The district judge noted at sentencing that the jury was entitled to credit Lipford's testimony that the defendants intended to harm him in order to steal his property, including his car. The district judge additionally alluded to the testimony and crime scene evidence that Jones fired a fourth shot from the vehicle, and the judge noted that this could be construed as evidence that Jones intended to harm Lipford in order to facilitate the defendants' getaway with the car. This evidence is sufficient to support the jury's finding of intent.

III.

Prior to the shooting, Lipford was convicted of misdemeanor theft of services and fined fifty dollars after he had a friend, who worked for a utility company, surreptitiously hook services up to his home.  Jones argues that the district court erred in excluding evidence of the conviction, because theft-of-services convictions must be admitted under Fed. R. Evid. 609(a)(2), which applies to crimes involving dishonest acts or false statements.  Theft of services is not automatically admissible as a crime of dishonesty or false statement, and the court did not err in excluding evidence of Lipford's prior conviction for impeachment purposes.

The Federal Rules of Evidence provide that a witness's character for truthfulness may be attacked by evidence of a conviction "for any crime regardless of the punishment . . . if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(2). A district court lacks discretion to exclude a crime of dishonesty or false statement from evidence.  *See United States v. Rodriguez*, 409 F. App'x 866, 869 n.2 (6th Cir. 2011).

Establishing the elements of theft of services under Tennessee law does not "require[] proving—or the witness's admitting—a dishonest act or false statement."  *See* Fed. R. Evid. 609(a)(2).  The relevant state statute proscribes "[i]ntentionally obtain[ing] services by deception, fraud, coercion, forgery, false statement, false pretense or any other means to avoid payment for the services."  Tenn. Code Ann. § 39-14-104.  Although a violation of the statute could indeed involve dishonesty or false statement—as is clear by the statute's references to deception, fraud, false statement, and the like—a defendant could also be convicted for using "any other means to avoid payment," so the statute clearly implicates conduct that does not fall within the ambit of Rule 609(a)(2).  Therefore, "establishing the elements of the crime" does not require establishing dishonesty or false statement.  Indeed, under the circumstances of Lipford's conviction, it does not appear that he engaged in any of the specifically enumerated acts contained in the statute, although he did use "other means to avoid payment."

A crime of dishonesty or false statement involves some element of active misrepresentation. The "dishonesty or false statement" language excludes "those crimes which, bad though they are, do not carry with them a tinge of falsification." *See United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977). Although a witness may have committed crimes tending to reflect poorly on his moral character, Congress in drafting Rule 609(a)(2) directed courts specifically toward crimes "in the nature of *crimen falsi*, the commission of which involve[] some element of deceit, untruthfulness, or falsification bearing on the [witness's] propensity to testify truthfully." *See United States v. Seamster*, 568 F.2d 188, 190 (10th Cir. 1978). The rule is intended to inform fact-finders that the witness has a propensity to lie, and, as morally repugnant as some crimes may be, crimes of violence or stealth have little bearing on a witness's character for truthfulness.

Lipford's crime fits more comfortably in the class of crimes that this court and others have concluded fall outside the scope of Rule 609(a)(2). Theft is a prime example of a crime of stealth, and it has been distinguished from crimes of dishonesty in most federal circuits. For instance, "[i]t is established in [the Eleventh] Circuit . . . that crimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)." *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990). The Eighth Circuit has reasoned that "[t]heft, which involves stealth and demonstrates a lack of respect for the persons or property of others, is not 'characterized by an element of deceit or deliberate interference with a court's ascertainment of truth.'" *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir. 1984) (quoting *United States v. Smith*, 551 F.2d 348, 363 (D.C. Cir. 1976)). Likewise, the Fifth Circuit has noted that shoplifting does not involve dishonesty or false statement within the meaning of the rule. *United States v. Entrekin*, 624 F.2d 597, 598–99 (5th Cir. 1980).

This circuit has adopted the position that theft and related crimes do not ordinarily amount to crimes of dishonesty or false statement. For example, the theft of "one fifty-seven cent box of baking soda . . . . [is] not the type of conviction involving dishonesty or false statement anticipated by the rule." *United States v. Scisney*, 885 F.2d

325, 326 (6th Cir. 1989). Nor is shoplifting. *See McHenry v. Chadwick,* 896 F.2d 184, 188 (6th Cir. 1990) (dictum). We recognize that a crime that is ordinarily one of dishonesty, such as shoplifting, may in some circuits nonetheless be deemed such a crime on the particular facts of the case. *See, e.g.*, *United States v. Dunson*, 142 F.3d 1213, 1216 (10th Cir. 1998). However, in any event, that is not the situation here because Lipford appears to have stolen services through stealth, as opposed to misrepresentation or fraud.

Jones contends that two unreported Tennessee Court of Criminal Appeals cases indicate that Tennessee views theft of services as a crime of dishonesty, and he implies that these state interpretations should direct the result in this court's review. *See Tennessee v. Simonton*, No. E2006-01529-CCA-R3-CD, 2007 WL 3379791 (Tenn. Crim. App. Nov. 15, 2007); *Tennessee v. McConnell*, No. E1998-00288-CCA-R3-CD, 2000 WL 688588 (Tenn. Crim. App. May 30, 2000). In *Simonton*, which involved the passing of bad checks, the party that opposed admitting the evidence conceded that the crimes involved dishonesty. *Simonton*, 2007 WL 3379791 at *11. The court in *McConnell* did conclude that theft of services in that case was a crime of dishonesty, but again, this does not appear to have been a contested issue. In any event, these cases turn on an interpretation of Tennessee's evidence rule, and not on an interpretation of the elements of the Tennessee crime. Although state courts have the ultimate authority in construing the content of state criminal laws, state courts do not control federal courts' interpretations of federal evidence rules.

Finally, any error by the district court in excluding evidence of the conviction was harmless. The effect on Lipford's credibility of a fifty-dollar fine is likely to be negligible, especially in light of the additional testimony offered by Lambert and the law enforcement witnesses.

IV.

Because the court provided enough information to remedy the jury's apparent confusion regarding the *mens rea* element of the carjacking charge, but declined to offer information on collateral and irrelevant matters, the court properly followed the law and

did not abuse its discretion in responding to the questions asked by the jury. *See United States v. Fisher*, 648 F.3d 442, 446–47 (6th Cir. 2011) (stating abuse-of-discretion standard).

The jury asked, "Does premeditation have to take place?"  The court noted that the jury appeared to be "confused about the concept, and this is not a case where premeditation is required," and its response stated, "[P]remeditation is not an element of the offense of carjacking.  Premeditation means with planning or deliberation."  At the end of the response, the court reminded the jury that it "may not single out or disregard any of the court's instructions on the law, but instead you are to consider all of the instructions as a whole."

The response to the question about premeditation was not an abuse of discretion because the question showed sufficient confusion to warrant clarification. While the original instructions provided a complete and adequate description of the elements of the carjacking charge, the jury's questions were interpreted by the court to indicate confusion as to a legal element of carjacking, i.e., whether premeditation was required. Concerned that the jury may have confused "intent" with "premeditation," the court issued an instruction clarifying that premeditation was not an element of the charged crime and providing a brief definition of the term to distinguish it from the term "intent." The remainder of the court's response referred the jury to the original instructions.

If the jury appears to be confused about an important legal issue, a court abuses its discretion if it does not provide instructions to remedy the confusion and clarify the issue. *Fisher*, 648 F.3d at 447.  However, a district court should refrain from providing "collateral or inappropriate advice" in response to jury questions. *Id.*  Jones contends that including a definition of premeditation "muddied the waters" and confused the jury as to the intent requirement for the carjacking charge.

We may only reverse if "the instructions, viewed as a whole, were confusing, misleading, and prejudicial." *United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009).  The district court clarified the legal requirements and returned the jury's attention to the otherwise accurate instructions.  The court's plain statement that

premeditation was not an element of the crime, even in light of its willingness to define the term, certainly falls short of the high bar of "confusing, misleading, and prejudicial" advice.

This conclusion is supported by our holding in *United States v. Nunez*, 889 F.2d 1564 (6th Cir. 1989). In that case a jury considering a conspiracy charge inquired as to whether an undercover government agent could constitute a party to a conspiracy. *Id.* at 1568–69. Because the question made clear that the jury was confused in such a way that it may have based its decision on an incorrect understanding of the law, the court was required to answer the jury's question. *Id.* In this case, the jury's confusion over premeditation indicated confusion about an important legal issue, and, in line with *Nunez*, the court properly provided advice to eliminate that confusion.

During deliberations, the jury also submitted a question that read: "What is the difference between carjacking and car theft?" The court responded, "[T]he defendants are not charged with auto theft. . . . Therefore, it is inappropriate to provide an instruction as to auto theft. . . . [T]he elements of the offense of carjacking begin on page 18. . . . It is as to those elements that you must make a determination." The court explained to counsel for both parties that it intended to reduce confusion among jurors and make clear that they should not make any determinations on offenses other than carjacking. Washington argues on appeal that the district court erred by failing to give additional information distinguishing auto theft from carjacking. But this inquiry stands in clear contrast to the inquiry regarding premeditation; the jury's request for information about a crime not charged sought collateral and inappropriate advice. Because providing the elements of a wholly different crime would have been confusing, misleading, and prejudicial, the district court was right to dismiss the jury's inquiry about car theft and to redirect the jury to the carjacking charge.

This conclusion is consistent with our decision in *Fisher*, in which we upheld the district court's denial of supplemental instructions when the jury asked about attorney-client privilege and an attorney's duty to report illegal activity, neither of which was relevant to an element of the charged offense of conspiracy to defraud the United States.

*See Fisher*, 648 F.3d at 447–48. As in *Fisher*, the jury's question here did not warrant further instructions because the original jury instructions provided a complete and accurate description of the relevant legal factors and the jury sought advice on questions not relevant to the issues before it. The court properly refused to elaborate on a collateral matter.

V.

Jones argues that the district court improperly applied a sentencing enhancement for obstruction of justice based on his false testimony during trial. He contends that the evidence casts too much doubt on the Government's version of events for the court to have properly found that he qualified for the enhancement. Because the court properly relied on the evidence available to it and made the requisite findings of fact, it did not commit clear error.

Contrary to Jones's assertions, the enhancement was not applied to his simple "refusal to admit guilt," nor did it interfere with his constitutional right to testify. The Supreme Court explicitly rejected the possibility of such a constitutional claim in *United States v. Dunnigan*, 507 U.S. 87 (1993), noting that "a defendant's right to testify does not include a right to commit perjury." *Id.* at 96. Moreover, Jones's testimony went beyond "refusing to admit guilt" and encompassed an entire version of events that the district court properly found to be perjurious. The district court noted that Williams stated to a federal investigator that Washington took the car, and the court concluded "[t]his is an accurate statement, a truthful statement. It is totally consistent with what the most credible witnesses in the case said. Certainly, consistent with what Lipford said, it is consistent with what Lambert said, it is consistent with the physical evidence in the case because we had a lot of discussion about where the shells were found and the body and so forth. . . . We had all of that information."

Jones argues that Mia Williams was not credible because she altered her second statement to the police. He also argues that Lipford, the victim, was not credible because the court had knowledge that he had recently been arrested for possession of ecstasy, which gives weight to Jones's account of a drug deal gone bad. However, the district

court also relied on evidence from Trenika Lambert, a witness whose credibility was not challenged at trial or on appeal, and physical evidence at the crime scene. Given the variety of evidence that the district court considered, the district court did not clearly err in applying the enhancement.

Relying on the evidence it found credible, the district court concluded that the testimony of the defendants that they did not steal the car was "simply false." The court later clarified that Jones's story that he left the scene on foot was false and that the falsehood was material because it was "intentionally stated for the purpose of obtaining a favorable result before the jury." The district court's findings of fact were not clearly erroneous. *See United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (stating standard of review).

On these facts, the sentencing guidelines call for a two-level enhancement because "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct . . . ." U.S. Sentencing Guidelines Manual § 3C1.1 (2011). Section 4 of the comments to § 3C1.1 provides a non-exhaustive list of obstructive conduct, which includes committing perjury with respect to "conduct that forms the basis of the offense of conviction." *Id.* at comment., n. 4(B). Perjury is determined with reference to the federal criminal perjury statute, and consists of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. If the defendant objects to the application of a perjury enhancement, the court must make specific findings of fact supporting its finding of perjury, and the court's findings must be sufficient to "encompass[] all of the factual predicates for a finding of perjury." *Id.* at 95. The district court's findings about the nature of the falsehood and the intentional and material nature of Jones's falsehoods were sufficient to satisfy the requirements of the guidelines and were properly applied.

VI.

Given the nature and extent of Lipford's wounds, the district court also did not commit clear error in applying a sentencing enhancement for permanent or life-threatening injuries.

The guidelines provide for a six-level enhancement if, in the course of a robbery, any victim sustains a "[p]ermanent or [l]ife-[t]hreatening [b]odily [i]njury." U.S. Sentencing Guidelines Manual § 2B3.1(b)(3)(C). Such an injury "involv[es] a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." *Id.* § 1B1.1 comment., n. 1(J). The district court determined, based on the testimony of the EMT, that Lipford's gunshot wounds were life-threatening. Lipford was shot four times, resulting in a six-month convalescence, a year-long need for a colostomy bag, the implantation of a steel rod in his leg, and a permanent impairment in the use of his hand.

The district court did not commit clear error in determining that Lipford's injuries were grave and long-lasting enough to be considered life-threatening and permanent. This conclusion is supported by our decision in *United States v. Baggett*, 342 F.3d 536, 540 (6th Cir. 2003). In *Baggett*, we affirmed a district court's conclusion "that the various conditions [cracked tooth, contusions, and spacial disorientation] together with severe bleeding, bruising and broken bones could reasonably be viewed as amounting to a life-threatening bodily injury." *Id.* In another decision, we concluded that "[o]ne who suffers a bullet wound that pierces ribs and diaphragm, collapses a lung and requires the transfusion of four units of blood has, we think, suffered an injury causing a substantial risk of death. The risk is not obviated because, despite the severity of the injury, the victim was too tough to die." *United States v. Helton*, 32 F. App'x 707, 716 (6th Cir. 2002) (unreported).

VII.

For the foregoing reasons, we affirm the district court's judgments.