NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0943n.06

No. 11-6089

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 04, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

       v.

DAVID JACKSON,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Tennessee

_____/

**Before: KEITH, GUY, and GIBBONS, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**      A jury convicted David Jackson of carjacking in violation of 18 U.S.C. § 2119 and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. Jackson challenges the sufficiency of the evidence to support his convictions and argues that the district court improperly allowed the jury to hear evidence of Jackson's prior bad acts under Federal Rules of Evidence 403 and 404(b). Alternatively, Jackson argues that his sentence was substantively unreasonable and asks that it be vacated and the matter remanded for resentencing. For the following reasons, we **AFFIRM**.

## I.

On July 11, 2010, Jackson and Anne Boyd had an altercation when Boyd went to Jackson's residence to retrieve their infant son, D.K.B., because she was concerned that Jackson intended to take the child out of the State of Tennessee against her wishes.[1]  When Boyd arrived at Jackson's residence, it appeared as if Jackson and the three women who were staying with him (Brooke Stumbo, Ashlea Laughlin, and "Bunny" Colina) were preparing to leave with D.K.B. in a Chrysler Sebring.

Boyd parked her car—a Dodge Intrepid—so as to block the Chrysler in the driveway. Jackson approached her car, threatened her with a rock, and told her to leave the property. Boyd refused to leave; she exited her vehicle and she and Jackson had a physical altercation. Boyd threatened to call the police, and Jackson took Boyd's cell phone and threw it into the woods.  Jackson then got into Boyd's Dodge, backed it up while Boyd was in its path, and departed in the car.  Boyd attempted to retrieve D.K.B. from the Chrysler, but was assaulted by Stumbo and Colina.  The women drove away with D.K.B. in the Chrysler, leaving Boyd stranded at the scene.  Two days later, Jackson, Stumbo, and Laughlin were arrested in Miami, Florida, and D.K.B. was safely returned to Boyd.  The Dodge was recovered along the highway in South Carolina, where it had broken down.

Jackson was charged with carjacking in violation of 18 U.S.C. § 2119 and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312.  The government

---

[1]Jackson had no formal rights to custody or visitation, and had limited contact with the eight-month-old child.

gave notice of its intention to offer evidence potentially admissible under Rule 404(b), and Jackson sought to exclude evidence of his prior bad acts under Rules 403 and 404(b). After a hearing on the matter, the district court issued a written decision granting Jackson's motion in part and denying it in part. A jury found Jackson guilty of both charges at the conclusion of the two-day trial, and the district court denied Jackson's motion for judgment of acquittal (made at the close of the proofs and renewed post-trial).

It was undisputed at sentencing that, as a career offender, Jackson's total offense level of 29 and criminal history category of VI would result in an applicable Guidelines range of 151 to 188 months. At the government's request, the district court made an upward departure and determined that a three-level increase in the offense level would result in an appropriate Guidelines range of 210 to 262 months. After a thorough discussion of the relevant factors under 18 U.S.C. § 3553(a), the district court imposed consecutive sentences of 180 months and 82 months, respectively (for a total of 262 months). This appeal followed.

## II.

### A.    Sufficiency of the Evidence

We review the challenge to the sufficiency of the evidence supporting a criminal conviction de novo. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). "The relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "we do not weight the evidence, assess the credibility of the

witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). "All reasonable inferences and resolutions of credibility are made in the jury's favor." *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2041 (2013).

### 1. Carjacking

"To obtain a conviction for carjacking, the government must prove that the defendant, (1) with intent to cause death or serious bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or by intimidation." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008) (citing 18 U.S.C. § 2119). The specific intent required by § 2119 may be satisfied by showing intent to seriously harm or kill the driver in all events (even if unnecessary to take the car), or by showing "that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver *if necessary to steal the car*." *Holloway v. United States*, 526 U.S. 1, 12 (1999) (emphasis added); *see also Washington*, 702 F.3d at 892 (explaining a showing of "conditional intent" to be "that the defendant was willing to inflict death or serious bodily injury had it become necessary in order to take the vehicle").

Contesting the sufficiency of the evidence with respect to intent, Jackson argues that the evidence was insufficient to establish a "nexus" between the evidence of intent to harm Boyd and the taking of the vehicle. Jackson emphasizes that he made no demand for Boyd's car when he brandished the rock (but was threatening harm if she did not leave the premises).

Jackson argues that, although there was evidence that he intended to harm Boyd *before* he took control of the Dodge, he obtained access to and control of the vehicle "by happenstance, unrelated to any threat" after Boyd voluntarily exited the vehicle. As *Holloway* makes clear, however, the question is whether there was sufficient evidence to establish that—at the time he took control of the Dodge—Jackson was willing to cause serious bodily harm to Boyd if it became necessary in order to take the Dodge. In fact, Jackson's neighbor, who witnessed the event, testified that Jackson put the Dodge in reverse with Boyd standing directly behind it and exited the driveway over her protestations. Although Jackson did not run her over (Boyd got out of the way), the jury was entitled to infer from the totality of the circumstances that Jackson had the intent to seriously harm or kill Boyd if it had been necessary in order to take the vehicle. *See Washington*, 702 F.3d at 892.

### 2.      Interstate Transportation of a Stolen Vehicle

Jackson challenges the sufficiency of the evidence to support his conviction for interstate transportation of a "motor vehicle . . . knowing the same to have been stolen." 18 U.S.C. § 2312. The term "stolen," for purposes of § 2312, means any felonious taking of a motor vehicle with intent to deprive the owner of the rights and benefits of ownership. *United States v. Turley*, 352 U.S. 407, 417 (1957). Jackson argues that a reasonable juror could not have found that he knew the Dodge was stolen because there was evidence that he had reason to believe he was the owner. This claim is without merit.

Jackson relies on Boyd's statement that the Dodge was not "officially" hers, although she also testified that Jackson purchased it for her. There was also evidence, however, that

the vehicle's title and registration documents identified Boyd as the owner; that Boyd paid for the vehicle's insurance and gas; and that Boyd exercised dominion, custody and control over the vehicle. Boyd not only referred to the Dodge as "hers," but also reported it stolen after Jackson took it. Taking the evidence in the light most favorable to the prosecution, there was sufficient evidence from which a reasonable juror could conclude that Jackson knew the Dodge was stolen.

## B.      Background and Rule 404(b) Evidence

Jackson claims that the district court erred in admitting evidence of his past assaults of Boyd, Laughlin, and Stumbo, as well as evidence of threats he directed toward those women. We review the district court's evidentiary rulings for abuse of discretion, keeping in mind that "it is an abuse of discretion to make errors of law or clear errors of factual determination." *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005).

### 1.      March 2010 Assault

Boyd testified that in March of 2010, Jackson assaulted her because he was angry that she had gone to a nightclub and left D.K.B. with a neighbor. The district court allowed this testimony under Federal Rule of Evidence 404(b), and denied Jackson's motion in limine to exclude it. We use the following three-step analysis to review the trial court's admission of Rule 404(b) evidence:

> First, we review for clear error the factual determination that other acts occurred. Second, we review de novo the legal determination that the acts were admissible for a permissible 404(b) purpose. Third, we review for abuse of discretion the determination that the probative value of the evidence is not substantially outweighed by unfair prejudicial impact.

*United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012).[2] The district court accepted the government's proffer, and Boyd's testimony at trial supported the finding that the assault occurred. The first prong was satisfied.

As to the second prong, evidence of a crime, wrong, or other act may be admissible for purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). The district court concluded that evidence of the March 2010 assault on Boyd was probative of Jackson's motive and intent to inflict serious bodily injury or death on Boyd during the July 2010 carjacking. *See United States v. Garcia-Meza*, 403 F.3d 364, 368-69 (6th Cir. 2005).

Reviewing this determination de novo, we agree that this testimony tended to prove Jackson's willingness to harm Boyd, especially when D.K.B.'s care and custody was at issue. Boyd's testimony describing the March 2010 assault was admissible for the purpose of proving that Jackson had the necessary intent to harm her if necessary during the carjacking.

Finally, we find no abuse of discretion in the trial court's determination that the probative value of the March 2010 assault was not substantially outweighed by unfair prejudice. As the trial court noted, the government did not have significant alternative means to prove Jackson's intent and any unfair prejudice was easily cured by a limiting instruction to the jury (which was given).

## 2.    Assaults of Laughlin and Stumbo

---

[2]Although the dissent in *Clay* identified an intra-circuit conflict concerning the proper standard of review for the second prong of the Rule 404(b) analysis, 667 F.3d at 703, we follow the approach outlined by the majority in *Clay* as it is our most recent published opinion on this point, *id*. at 693-95.

Jackson argues that Ashlea Laughlin's and Brooke Stumbo's testimony that Jackson assaulted them in the days surrounding the carjacking should have been excluded because it was unrelated to the carjacking and was highly prejudicial.[3]  The court denied Jackson's motion in limine to exclude such testimony, finding that it was res gestae (or "background evidence") and, alternatively, admissible under 404(b).  The district court concluded that:

> the government simply cannot tell the story of the carjacking without also telling the story of the kidnapping . . . [and] the government cannot tell the story of the kidnapping without establishing the relationship between Jackson and [Laughlin and Stumbo] and giving the jury an understanding of why [they] would act at the direction of Jackson.

We review the trial court's decision to admit the testimony as res gestae for an abuse of discretion.  *Clay*, 667 F.3d at 698.

"Proper background evidence . . . [typically] is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).  There must exist temporal proximity, causal relationship, or a spacial connection between the other acts and the charged conduct.  *Id.* at 749.

Here, evidence of Jackson's threats and assaults against Laughlin and Stumbo in the days surrounding the carjacking explained why they feared Jackson and why they kidnapped

---

[3]Laughlin testified that Jackson beat her the day before the alleged carjacking as punishment for her attempt to flee his control, beat Stumbo the day before the carjacking, and threatened her life when they were in Miami, Florida.  Stumbo testified that Jackson hit her on the back of the head during their car-trip to Miami and threatened her and her children.

the child. That information completes the story of why the carjacking and car theft occurred. The district court did not abuse its discretion in finding this was proper background evidence. The district court also determined that the probative value was not substantially outweighed by the danger of unfair prejudice to Jackson, and a limiting instruction was given. *See Wright*, 16 F.3d at 1443. Recognizing that the balancing of probative value and the danger of unfair prejudice is afforded great deference, we cannot find the district court abused its discretion in this regard.[4]

### 3. Post-Arrest Statement

After Jackson was arrested in Florida, he made the following statement to FBI Agent Gerard Starkey: "She better hope I don't get out of this mess 'cause I'm going to fix that bitch . . . . You can write all that down FBI bitches. I get out of this, and this shit ain't going to be good for them snitches. Fuck them all." This statement was allowed into evidence despite Jackson's motion in limine to exclude it.

We need not decide whether the admission of such statement was in error because any possible error was harmless. Generally "the admission of evidence of prior bad acts is harmless error if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *Clay*, 667 F.3d at 700 (internal quotation marks and citation omitted). In this case, there was overwhelming evidence of Jackson's guilt. The government presented four eyewitnesses to the crimes. Those

---

[4]Even if this evidence were admitted in error, that error would be harmless given the evidence of Jackson's threatening behavior toward Boyd, including brandishing a rock at her, having a physical altercation with her, and nearly running her over in taking the Dodge. *Clay*, 667 F.3d at 700.

witnesses' testimony was generally consistent and established that Jackson committed both the carjacking and car theft on the date in question.[5]

## C.    Sentencing

Challenging only the substantive reasonableness of his sentences, Jackson argues that the district court:  (1) failed to consider certain mitigating factors; (2) triple-counted his criminal history; and (3) placed undue weight on the Guidelines.  We review the substantive reasonableness of the sentence for an abuse of discretion, regardless of whether the sentence is within or outside the Guidelines range.  *Gall v. United States*, 552 U.S. 38, 46, 51 (2007). We apply the same standards to an upward departure as we do to a variance from the advisory Guidelines range.  *See United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008).

At the outset, we find no indication that the district court placed undue weight on the Guidelines.  In fact, the district judge repeatedly acknowledged that the Guidelines were merely advisory and that he was free to disagree with them.  The decision not to disagree with them in this case was not an abuse of discretion.  *See United States v. Simmons*, 587 F.3d 348, 364 (6th Cir. 2009).

Next, many of the mitigating factors Jackson has identified on appeal were not raised at the time of sentencing (i.e., that he funded the purchase of the vehicle he stole, his sickle

---

[5]Although we decline to rule on the issue, we note that Jackson's post-arrest statement appears to have been properly admitted as res gestae or background evidence.  As noted above, Jackson's relationship with Stumbo and Laughlin was at issue because it helped explain why the kidnapping of D.K.B. occurred, which in turn explained why the carjacking and car theft occurred.  Jackson's post-arrest statement to Agent Starkey helps complete this story as it corroborates the government's claim that Jackson used intimidation and threats to control Stumbo and Laughlin and would have been willing to inflict harm on Boyd.

cell anemia, and the fact that he was shot when he was sixteen years old). We find no abuse of discretion in the district court's failure to consider mitigating factors that were never raised. *See United States v. Walls*, 546 F.3d 728, 737 (6th Cir. 2008). Jackson also argues that the court failed to consider his troubled upbringing and past suicide attempts. A review of the sentencing transcript reveals, however, that the court did consider such factors but was unpersuaded that they warranted a reduction in Jackson's sentence.

Finally, Jackson's claim that the court "triple counted" his criminal history is also unpersuasive. The district court properly categorized Jackson as a career offender and then granted the government's motion for an upward departure because of Jackson's under-represented criminal history and his risk of recidivism. *See* U.S.S.G. § 4A1.3. In doing so, the district court considered offenses that had not been included in Jackson's criminal history score and noted that Jackson had a pattern of committing offenses "while awaiting disposition of prior criminal offenses." The court then considered *all* of the 18 U.S.C. § 3553(a) factors—including Jackson's extensive criminal history and the fact that he took an infant through violent means—before sentencing Jackson at the high end of the post-departure Guidelines range. *See United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting similar double-counting argument).

Giving due deference to the district court's determination that the § 3553(a) factors justified the extent of the departure in this case, we cannot conclude that Jackson's sentences were substantively unreasonable. *Gall*, 552 U.S. at 51 ("The fact that the appellate court

might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

**AFFIRMED**.