**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name:  15a0733n.06

Nos. 14-1159/1160

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Nov 03, 2015<br>DEBORAH S. HUNT, Clerk |
| **Plaintiff-Appellee,** | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| SUE A. WILSON; GARY L. WILSON, | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellants.** | ) | |
| | ) | |

**BEFORE:  NORRIS, ROGERS, and WHITE, Circuit Judges.**

**PER CURIAM.**  The Wilsons were convicted after a jury trial for their participation in a fraudulent payroll scheme. On appeal, they assert that the evidence was insufficient to support their convictions and that the district court erred (1) when it refused to allow Defendants' accountant to testify in support of a "good faith reliance" defense, and (2) in applying certain sentencing enhancements. For the reasons outlined below, we **vacate** the judgment of the district court.

## I.

Sue and Gary Wilson, together with co-defendants Maxine and Robert Pochmara, owned a NAPA auto parts store in Rogers City, Michigan. From 1998 to 2009, Robert Pochmara worked at the NAPA store while simultaneously receiving disability retirement benefits from the Railroad Retirement Board, a federal agency (the "RRB"). As a condition to receiving benefits,

Robert Pochmara was obligated to report any employment to the RRB, whether or not he was compensated for the work. The RRB sent annual notices to Mr. Pochmara reminding him of his obligation to report that information; additionally, in 2008 Mr. Pochmara signed and submitted a form to the RRB affirmatively stating that he had not worked since being awarded disability benefits in 1991.

In order for Mr. Pochmara to work at the NAPA store and simultaneously collect disability benefits, from 1998 to 2009 the Wilsons caused the wages earned by Mr. Pochmara to be paid to Maxine Pochmara, and caused his earnings and tax information to be reported to the government using her name and social security number. In addition, Maxine Pochmara opted out of social security at the job where she actually worked, instead participating in that employer's private social security alternative. If the fraudulent wage scheme had not been discovered, Ms. Pochmara would have been able to draw retirement benefits from both her employer's plan and, based on the NAPA store wages, Social Security.

In late 2012, the Wilsons and the Pochmaras were each indicted for violation of 18 U.S.C. § 371 (Conspiracy to Defraud the United States) and 42 U.S.C. § 408(a)(6) (False Information to Social Security). The Pochmaras pleaded guilty to those two counts, plus a third, while the Wilsons elected to go to trial.

Before the trial, the Wilsons indicated their intention to offer as a defense that they relied in good faith on advice from their accountant as to how they paid and reported Mr. Pochmara's earnings. The accountant purportedly would have testified that the money paid to Maxine Pochmara was a return on her capital investment in the store, rather than wages. The government objected to the defense and admission of the testimony, asserting that the testimony lacked foundation and stating that the government considered the accountant an unindicted co-

conspirator. The district court refused to allow the accountant's testimony unless the Wilsons testified or otherwise established a foundation for the accountant's testimony. *United States v. Wilson*, No. 12-20607, 2013 WL 2048308, at *3 (E.D. Mich. May 14, 2013). The Wilsons elected not to testify or call any witnesses.

During the trial, the government called witnesses including an agent from the RRB, an Internal Revenue Service agent, and several lay witnesses who testified that Robert Pochmara worked regularly at the store and Maxine Pochmara did not. The government conclusively proved, and the Wilsons do not dispute, that Robert Pochmara worked at the NAPA store, that all wages were paid to Maxine Pochmara, and that all wages were reported to various government agencies (including the Internal Revenue Service and the Social Security Administration) under Maxine Pochmara's name and social security number.

The jury convicted the Wilsons on both counts. In calculating the sentencing guidelines range, the district court applied an obstruction of justice sentencing enhancement for each of the Wilsons for filing false financial disclosures with the probation office, plus another obstruction of justice enhancement for Gary Wilson for attempting to intimidate two government witnesses. Finally, the district court applied a sentencing enhancement for Gary Wilson based on his leadership role in the offense. The sentencing guidelines after all enhancements was fifty-one to sixty-three months' imprisonment for Gary Wilson, and thirty-three to forty-one months' for Sue Wilson.

At sentencing, the district court granted each of the Wilsons a downward variance under 18 U.S.C. § 3553(a)(1) based on "the nature and circumstances of the offense and the history and characteristics" of the Wilsons. In the end, the district court sentenced Gary Wilson to thirty-six months' imprisonment, and Sue Wilson to twenty months' imprisonment, and ordered restitution

to the RRB in the amount of $226,194.35. Because of the large amount of restitution, owed jointly and severally with the Pochmaras, the district court waived the imposition of a fine.

## II.

The Wilsons appeal (1) the sufficiency of the evidence supporting their convictions, (2) the district court's pre-trial ruling that the Wilsons could not present a defense of "good faith reliance" on their accountant's advice, (3) the false financial disclosures sentencing enhancement for each of them, (4) the additional obstruction of justice sentencing enhancement for Gary Wilson for intimidating two witnesses, and (5) the sentencing enhancement for Gary Wilson based on a leadership role in the offense. We will address each of the claims in turn. Although we conclude that issue two requires we vacate the convictions, we nevertheless address the sentencing issues in the interest of judicial economy because they are likely to recur if the Wilsons are convicted again on remand.

### A. Sufficiency of the Evidence

"When reviewing a criminal conviction for sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "'All reasonable inferences and resolutions of credibility are made in the jury's favor.'" *Id.* (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). "A convicted defendant bears 'a very heavy burden' to show that the government's evidence was insufficient." *Id.* (quoting *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012)).

The Wilsons were convicted on two counts. Count one was conspiracy to defraud the United States:

> If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. Count two was providing false information to the Social Security Administration:

> Whoever . . . willfully, knowingly, and with intent to deceive the Commissioner of Social Security as to his true identity (or the true identity of any other person) furnishes or causes to be furnished false information to the Commissioner of Social Security with respect to any information required by the Commissioner of Social Security in connection with the establishment and maintenance of [wage records].

42 U.S.C. § 408(a)(6).

The Wilsons concede that Robert Pochmara worked at the NAPA store, and that they caused all of his paychecks and related reports to the government to use Maxine Pochmara's name and social security number. Nevertheless, the Wilsons contend that the government never established that they knew about Robert Pochmara's pension or knew that the objective of the payment scheme was to defraud the RRB. The Wilsons reason that without knowing the purpose behind the Pochmaras' desire to be paid in this manner, they could not be have been culpable participants in any conspiracy.

However, there is nothing in the conspiracy statute that would require the Wilsons to fully understand Robert Pochmara's earnings restrictions or reporting obligations under his RRB pension. Even accepting for the sake of argument that the Wilsons were wholly unaware of Mr. Pochmara's disability income, there was ample evidence that by intentionally paying Maxine Pochmara for Robert Pochmara's work the Wilsons took steps to defraud other agencies of the federal government, namely the Internal Revenue Service and the Social Security Administration.

5

Turning to the filing of false information with the Social Security Administration, the analysis is similar. The Wilsons argue that the government failed to prove that the wages paid to Maxine Pochmara were not for work she actually performed at the NAPA store, and further, as minority co-owner Maxine Pochmara had the right to direct how she was paid and how it was reported. The jury disagreed. Several witnesses testified at trial that Robert Pochmara worked at the store and Maxine Pochmara did not. The government provided sufficient evidence that the Wilsons caused deceptive wage reports to be filed with the Internal Revenue Service and Social Security Administration for a rational jury to find guilt beyond a reasonable doubt as to both of the Wilsons, on both of the counts.

## B. Good Faith Reliance Defense

In a pre-trial ruling, the district court refused to allow the Wilsons to call their accountant in support of the defense that they relied in good faith on his advice.

We generally review a district court's evidentiary rulings for an abuse of discretion. *United States v. Yu Qin*, 688 F.3d 257, 261 (6th Cir. 2012). "We will find that a district court has abused its discretion when we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003)).

Before trial, the Wilsons indicated their intention to call only one witness, the accountant, who purportedly would testify that the amounts paid to Maxine Pochmara were properly reported as a return on her investment in the store, rather than as wages. The district court was skeptical, since Robert Pochmara received nothing at all for his labor, and Maxine Pochmara was said to have received a return on her investment, although it had been reported in the form of W-2 wages. The government objected to permitting the defendants to raise the defense solely on the

6

accountant's testimony that the income was a return on Maxine Pochmara's investment and,

perhaps, that he had so advised defendants. The government further expressed concern that, since

it believed the accountant was an unindicted co-conspirator in the fraudulent scheme, if he were

called to testify he might invoke his Fifth Amendment right not to incriminate himself.

> After the parties briefed the issue, the district court ruled that:

> [T]he "elements of a 'reliance defense' include: (1) full disclosure of all pertinent facts, and (2) good faith reliance on the accountant's advice.'" *United States v. Rozin*, 664 F.3d 1052, 1060 (6th Cir. 2012) (quoting *United States v. Duncan*, 850 F.2d 1104, 1116 (6th Cir. 1988)). Where a defendant "either did not provide full information to those he supposedly relied upon, or he had reason to believe that the advice provided by these individuals was incorrect," that defendant cannot "mount a credible good faith reliance defense." *Rozin*, 664 F.3d at 1060. . . .
> . . . .
> . . . It is unclear whether [the accountant's] testimony alone could satisfy the Wilsons' burden of demonstrating he possessed all of the pertinent information when he provided the advice. What is clear, however, is that his testimony, without more, will not be enough to show that the Wilsons actually, and in good faith, relied upon him. . . . There must be evidence they provided him all the pertinent facts for making disclosures to the government, and evidence to demonstrate they relied upon his advice in good faith. Unless the Wilsons can provide this evidence, either through their testimony or that of another, there is no foundation for [the accountant's] testimony.

*Wilson*, 2013 WL 2048308, at *3 (footnote omitted).

At the conclusion of the government's case, the district court asked the Wilsons whether

either of them wished to testify, and both declined. The court then reiterated its ruling about the

conditions under which the Wilsons' accountant could testify, and the Wilsons reaffirmed their

intention not to testify or put on any witnesses.

In ruling on the Government's motion in limine, the district court held that the Wilsons'

accountant could not testify because his testimony alone could not establish the second element

of the good faith defense, which is that "the Wilsons actually, and in good faith, relied upon [the

accountant]." However, the accountant's testimony could have established both elements of the

defense. First, to find that the Wilsons disclosed all pertinent facts to the accountant, the jury

7

could have compared the information provided to the accountant with the Government's evidence. Second, the jury could have also found that the Wilsons acted in good faith reliance on the accountant's advice based on the fact that the Wilsons provided information to the accountant and acted in accordance with his advice.

Moreover, the accountant should not have been barred from testifying on the basis that the Wilsons' pre-trial proffer was inadequate. A party must make a proffer sufficient only to inform the court of the substance of the evidence, and need not make a formal offer of proof. Fed. R. Evid. 103(a)(2); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 597–98 (6th Cir. 2012); *United States v. Ganier*, 468 F.3d 920, 924 (6th Cir. 2006).

In this case, the Wilsons made an adequate proffer because their attorney discussed the substance of the accountant's testimony at the final pre-trial conference. At that hearing, the court stated that "the defense in th[is] case is related to the fact that advice was sought from a certified public accountant who said that both the tax reporting and the responses to the pension board were correct and in accord with the law." The Wilsons' attorney responded "[t]hat's correct," and then elaborated that he "expected [the accountant] to say that [the payment to Maxine Pochmara] was a return on investment, using those words." When the court further questioned the attorney about how the payment was a return on an investment, the attorney stated that he did not want to answer that question "in th[e] open courtroom prior to trial." The following exchange then occurred:

> THE COURT: But the accountant says, this is an appropriate way in which to structure this and your clients relied on it. That's your suggestion.
> MR. JACOBS: Yes, sir.
> THE COURT: So the question that we've got at this stage is whether that reliance provides your client a defense as opposed to a co-defendant.

8

MR. JACOBS: I believe so. I think the Court has correctly stated the issue as the ability to rely on the accountant and the ability to use that reliance as somehow a defense to a criminal charge.

These exchanges make clear that the court knew the substance of the accountant's proposed testimony. Because an accountant's testimony alone may establish both elements of a good faith defense and because the Wilsons' pre-trial proffer was adequate, the accountant should have been allowed to testify at trial.[1]

## C. Obstruction of Justice Enhancements

The sentencing guidelines provide for a two-level enhancement where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1.

"Although we apply a clearly-erroneous standard of review to the district court's findings of fact, the determination of whether specific facts actually constitute an obstruction of justice is a mixed question of fact and law that we review *de novo*." *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012) (citing *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009)); *see also United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014).

### 1. *Misleading Financial Disclosures by Both Gary Wilson and Sue Wilson*

The district court applied an obstruction of justice sentencing enhancement to each of the Wilsons based on their alleged concealment of assets in a pre-sentence financial report to the probation office in connection with fashioning the restitution and fine part of their respective

---

[1] The question whether the accountant's testimony would have provided a foundation for an instruction on the good faith defense is a separate issue not raised by the facts in this appeal. *See United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994).

sentences. The two main misrepresentations cited were the value of the NAPA store as an asset and failing to report certain retirement accounts.

In 2013, the Wilsons reported to the probation office that the value of the NAPA store was negative $82,113.75 ($60,000 in assets and $142,113.75 in liabilities), while in a 2009 loan application the Wilsons represented that the business was worth in excess of $436,000. Further, the Wilsons reported assets in one small retirement account but omitted multiple other, larger accounts.

The Wilsons contend on appeal that the value of the NAPA store included in the loan application was optimistic, and assumed continued involvement and hard work by the Wilsons, while the pessimistic valuation as part of their sentencing was based on the closing of the store and the liquidation of the inventory. There is some logic to this argument. If we accept that (i) the value of a business can be calculated myriad ways, (ii) the loan application to the bank was optimistic, bordering on puffery, and (iii) the valuation provided to the probation office was based on the store closing and its contents liquidated, then it is possible that the valuations could differ by such a large margin. However, this *possibility* does not help the Wilsons. First and foremost, they offer no explanation for failing to report several retirement accounts, and that omission alone supports the obstruction of justice enhancement. Second, there are facts in the record that support the district court's factual conclusion that the negative store valuation was intentionally deceptive. The district court's application of an obstruction of justice enhancement for deceptive financial disclosures was not erroneous.

### 2. *Intimidation of Witnesses by Gary Wilson*

In addition to the obstruction of justice enhancement for false financial disclosures, Gary Wilson was assessed a two-level enhancement for obstruction of justice because he attempted to

10

intimidate two of the government's witnesses. Obstruction of justice under the guidelines can include "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt. n.4(A).

On appeal, Mr. Wilson advances two arguments on this issue. As an initial matter, he asserts that it is never proper under the guidelines to apply two separate obstruction of justice enhancements. On this, he is mistaken. *See, e.g.*, *United States v. Vaught*, 133 F. App'x 229, 235 (6th Cir. 2005) (approving the aggregation of two obstruction of justice sentencing enhancements and collecting cases from other circuits).

Factually, Mr. Wilson admits talking to government witnesses before the trial, and telling them that there could be legal consequences for testifying against him and hurting his business. Mr. Wilson maintains, however, that his intention was only to make certain the witnesses told the truth and to warn the witnesses against lying about him or his company. Because witness testimony did not corroborate his assertion, the district court did not err in finding that Mr. Wilson attempted to intimidate the two witnesses and applying the second obstruction of justice enhancement.

### D. Leadership Role Enhancement for Gary Wilson

The sentencing guidelines allow for an enhancement of two levels for an aggravating role in the offense if "the defendant was an organizer, leader, manager, or supervisor" of criminal activity. U.S.S.G. § 3B1.1. Mr. Wilson disputes the district court's application of this enhancement, noting that he did not organize or lead the fraudulent scheme, nor did he profit from it.

"We review challenges to the reasonableness of a sentence for abuse of discretion." *Kamper*, 748 F.3d at 739 (citation omitted). "Our first task in evaluating the reasonableness of

the district court's sentence is to 'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . .'" *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "[W]here a district court makes a mistake in calculating a guidelines range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing 'unless we are certain that any such error was harmless—i.e. any such error did not affect the district court's selection of the sentence imposed.'" *United States v. Duckro*, 466 F.3d 438, 446 (6th Cir. 2006) (quoting *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005)).

"The government bears the burden of proving that [a role] enhancement applies by a preponderance of the evidence." *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000) (citing *United States v. Martinez*, 181 F.3d 794, 797 (6th Cir. 1999)). In reviewing whether a defendant's role justifies a role enhancement under U.S.S.G. § 3B1.1, we review factual findings underlying a district court's decision for clear error and accord deference to the district court's legal conclusion. *See United States v. Washington*, 715 F.3d 975, 982-83 (6th Cir. 2013).

In describing when a sentencing enhancement under §3B1.1 for a defendant's role in the offense is appropriate,

> We have explained that "a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted." *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000) (quoting *United States v. Gort–Didonato*, 109 F.3d 318, 321 (6th Cir. 1997)). In determining whether a defendant qualifies as a leader, organizer, manager, or supervisor, a district court should consider a number of factors including, but not limited to, "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. (n.4). *See also Moncivais*, 492 F.3d at 660. "Merely playing an essential role in

12

the offense is not equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise." *Vandeberg*, 201 F.3d at 811 (citing *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996)).

*Lalonde*, 509 F.3d at 765.

Each of the pre-sentence reports prepared in this case state that "Maxine C. Pochmara would have directed Gary L. Wilson and Sue A. Wilson with respect to the fraudulent acts; therefore, a role enhancement does not seem applicable." Notwithstanding that statement, in calculating the guideline sentencing range each report also applies a two-level enhancement for being "an organizer, leader, manager, or supervisor" of the criminal activity.

After the parties submitted sentencing memoranda and the court held an evidentiary hearing, the district court issued an Order Summarizing Advisory Guidelines Conclusions. Despite the apparent internal inconsistency of the reports, the district court stated that the reports "appropriately scored the Wilsons for their role in the offense." The court did not otherwise refer to "role in the offense" for either Gary or Sue Wilson, nor did it refer to a role-related sentence enhancement for either of them, but concluded by stating that the guidelines range for Gary Wilson was fifty-one to sixty-three months. The guidelines range for Gary Wilson, with the obstruction of justice enhancements but without a role enhancement, would have been forty-one to fifty-one months. At the sentencing hearing, counsel for Gary Wilson questioned the apparent discrepancy. The government interjected that it was due to a leadership role enhancement, and the district court simply agreed with the government without explanation.

At sentencing, the district court did not describe the factual basis or reasoning to support applying a leadership enhancement. The court did find that Mr. Wilson's role was "essential," and that he had the ability to end the scheme at any point, but that alone is not sufficient to support a leadership enhancement. *See Vandeberg*, 201 F.3d at 811. One notable (though not dispositive) factor in determining leadership in a criminal enterprise is whether the purported

13

leader claimed a right to a larger share of the fruits of the crime. *See, e.g.*, *United States v. Kelly*, 204 F.3d 652, 658 (6th Cir. 2000) (finding leadership role where defendant kept 25% of the profits leaving the other seven participants to split the rest); *United States v. Taniguchi*, 49 F. App'x 506, 520 (6th Cir. 2002) (finding leadership enhancement where defendant "took a larger share of the proceeds than the other members"). Here, the district court acknowledged that during the lengthy fraudulent scheme neither of the Wilsons received any financial benefit but rather were guilty of facilitating a scheme that benefited the Pochmaras.

"When a district court fails to articulate the factual basis for an enhancement, it either compels this Court to review the record de novo, or runs the risk that this Court will have to remand the case for insufficient findings and reasoning." *Vandeberg*, 201 F.3d at 810 (citation omitted). Here, as in *Vandeberg*, a remand for further findings is unnecessary because we have searched the record and it clearly fails to support a two-level enhancement for Mr. Wilson based on his role in the offense. *See id.* at 811.

### III.

Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.